**SO ORDERED.**

**SIGNED this 24 day of August, 2006.**



_____
A. Thomas Small
United States Bankruptcy Judge

_____

```
              UNITED STATES BANKRUPTCY COURT
              EASTERN DISTRICT OF NORTH CAROLINA
                      RALEIGH DIVISION
```

| | |
|---|---|
| IN RE: | CASE NO. |
| MIDWAY AIRLINES CORPORATION, | 01-02319-5-ATS |
|     DEBTOR | |
| JOSEPH N. CALLAWAY, Chapter 7 Trustee for MIDWAY AIRLINES CORPORATION, | ADVERSARY PROCEEDING NO. S-05-00098-5-AP |
|     Plaintiff | |
|     v. | |
| BLANK ROME, LLP, | |
|     Defendant. | |

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

The two matters before the court are the Motion for Judgment on the Pleadings filed by the plaintiff, Joseph N. Callaway, chapter 7 trustee for Midway Airlines Corporation, and the Cross-Motion for Summary Judgment filed by the defendant, Blank Rome, LLP. A hearing

was held in Raleigh, North Carolina on July 25, 2006. Both motions will be denied.

This adversary proceeding was brought by the chapter 7 trustee for Midway Airlines to require Blank Rome to disgorge attorney's fees of $612,371.55 (including a $100,000 retainer that Blank Rome is holding in trust) that Blank Rome received as counsel to the Unsecured Creditors Committee when Midway was a chapter 11 debtor in possession. The trustee contends that Midway Airlines is administratively insolvent and that 11 U.S.C. § 726(b), which requires pro rata payment of similar claims, mandates disgorgement of the fees paid.

Blank Rome contends that § 726(b) does not mandate disgorgement and raises several defenses including the statute of limitations (§ 549(d)(1)), laches, estoppel, waiver, res judicata, and § 330(a)(5). Blank Rome argues that the motion for judgment on the pleadings should be denied and that summary judgment should be granted in its favor based on its affirmative defenses with respect to the $512,371.55 that has been paid to it. Blank Rome also maintains that it is entitled to summary judgment with respect to its court-approved $100,000 retainer and its remaining cost of administration claim in the amount of $192,054.32, to which it says the $100,000 retainer should be applied.

**Facts**

Midway Airlines Corporation filed a petition for relief under chapter 11 of the Bankruptcy Code on August 13, 2001, and after its

2

efforts to reorganize were unsuccessful, the case was converted on October 30, 2003, to chapter 7. The chapter 7 trustee has determined that there are not sufficient funds to pay all of the chapter 11 costs of administration, and he has filed adversary proceedings against the professional persons that received compensation for services rendered while Midway was a chapter 11 debtor in possession.

The statutory Committee of Unsecured Creditors ("Committee") was appointed on August 27, 2001, and on September 5, 2001, the Committee filed an application for an order authorizing the employment of Blank Rome as its counsel *nunc pro tunc* to August 28, 2005, pursuant to 11 U.S.C. §§ 328 and 1103, and Federal Rule of Bankruptcy Procedure 2014. That employment application provided, in relevant part, as follows:

> In view of the risk of non-payment, BRCM [Blank Rome] has requested, and the Committee has agreed, that BRCM should be paid by the Debtors at the outset of BRCM's employment an advance of $100,000.00 to be held by BRCM and applied to the fees and disbursements approved by the Court on BRCM's application for final allowance under Bankruptcy Code § 330, with BRCM also entitled to receive interim compensation under Bankruptcy Code § 331.

Employment Application at ¶ 8.

On September 20, 2001, the court entered an order authorizing the employment of Blank Rome as counsel to the Committee *nunc pro tunc* to August 27, 2001. The employment order provided that the debtor should "promptly pay $100,000.00 to BRCM which BRCM shall hold in escrow as an advance to be applied against the compensation and reimbursement of

disbursements the Court approves on BRCM's application for final allowance under § 330 of the Bankruptcy Code." Employment Order at ¶ 3. Blank Rome currently holds the $100,000 in its trust account.

On October 11, 2001, the court entered an order pursuant to §§ 105 and 331 of the Bankruptcy Code establishing the procedures for interim compensation and reimbursement of expenses for professionals. The administrative order provides:

> [a] No sooner than every sixty (60) days, each of the Professional Firms (as defined in the motion) may file with the Court and serve on the Bankruptcy Administrator, an application for interim Court approval and allowance pursuant to § 331 of the Bankruptcy Code of the compensation and reimbursement of expenses requested for the sixty (60) day period (an "Interim Fee Application"). . . .
>
> . . .
>
> (c) If no objection to an Interim Fee Application is filed . . ., an Order will be entered approving the application, and the applicant is authorized to be paid 100% of the fees approved and 100% of the expenses to be reimbursed, to be paid from the general operating funds of the company; however, each of the Professional Firms shall hold 20% of the fee approved in trust, pending final approval.
>
> (d) Upon case closure, confirmation of a plan, or conversion of the case to Chapter 7, each of the Professional Firms shall file a final fee application and, to the extent it becomes entitled to do so, may use the 20% held in trust to satisfy the outstanding amounts due, returning any balance to the estate. This final fee application will be served on all creditors and parties in interest, who will be provided notice and an opportunity to be heard.

Administrative Order ¶¶ [a], (c), (d).

During the chapter 11 case, Blank Rome filed a total of nine interim fee applications, seven of which were approved by orders

entered by the court. After conversion of the case to chapter 7, Blank Rome filed its tenth and final fee application on December 11, 2003, wherein it sought final allowance of all fees and expenses incurred up to conversion. The court considered a limited objection filed by the trustee, which among other things questioned whether Blank Rome had held back 20% of the interim fees awarded to it as required by the court, and on March 15, 2004, entered its Order Regarding Interim and Final Chapter 11 Fee Applications For Creditors Committee Professionals Blank Rome LLP and FTI Consulting, Inc.

The court found that Blank Rome and another professional, FTI, failed to hold 20% of the interim fees awarded to it in trust pending final approval. The court explained that "the purpose of the 20 percent holdback was to ensure that funds would be available if the estate was determined to be administratively insolvent or if the final fee approval was less than the interim fees that had been approved and paid." Final Fee Order pp. 2-3. Though Blank Rome did hold $100,000 in trust, the court explained that

> that is the retainer that it obtained as a condition of Blank Rome's employment. The $100,000 retainer was to protect Blank Rome and was to be available at the end of the case to assure payments of Blank Rome's final fee request. In contrast, the 20 percent holdback was to protect the debtor's estate in the event that the estate was administratively insolvent or the interim fees allowed to Blank Rome were less than the final fees approved.

Final Fee Order p. 3. The court noted that FTI "has now placed $90,000 in trust, an amount that is a little more than 20 percent." Final Fee

5

Order p. 3.  The court declined to reduce the fees allowed to Blank Rome and FTI by the amounts that they should have held in escrow, explaining that neither professional made any misrepresentation, and there is "no hint of prior misconduct." Final Fee Order p. 3-4.  The court sanctioned Blank Rome by reducing its fee by $11,000, which sum Blank Rome was required to pay to the trustee.  The order provided further:

> Additionally, the $100,000 held in trust by Blank Rome and the $90,000 held in trust by FTI shall continue to be held in trust until further order of this court.  The trustee shall submit, within 30 days from the date of this order, an estimate of administrative fees and what funds will be available to pay administrative fees.  After the court receives the trustee's estimate it will consider releasing the funds held in trust to pay the fees allowed in this order.

Final Fee Order p. 4.  The awarding language in the final fee order provided, in part, as follows:

> The final fee application for Blank Rome is allowed and awarded as follows:  $648,760.75 ($659,760.75 less a sanction of $11,000) for reasonable compensation for actual, necessary services rendered, and $55,665.02 for reimbursement of actual, necessary expenses incurred by Blank Rome as Committee counsel. However, no payments shall be made at this time.  Blank Rome shall continue to keep the $100,000 retainer in trust and shall immediately pay the sum of $11,000 to the chapter 7 trustee.

Final Fee Order p. 4.

Blank Rome has been paid $512,371.55 in interim compensation thus far and it also holds, in escrow, the $100,000 retainer paid pursuant to the employment order.  The trustee seeks to recover from Blank Rome

6

the $512,371.55 paid to Blank Rome as interim compensation as well as the $100,000 retainer that Blank Rome holds in trust.

The trustee's motion for judgment on the pleadings is based on his contention that the Midway estate is administratively insolvent and that disgorgement is mandated by § 726(b). Blank Rome maintains that the pleadings do not establish administrative insolvency and that for purposes of this motion the court may not consult its own records to make that determination. But, even if the court assumes that the estate is administratively insolvent, the trustee may not prevail.

The trustee relies primarily on the decision of the United States Court of Appeals for the Sixth Circuit in Specker Motor Sales Co. v. Eisen, 393 F.3d 659 (6th Cir. 2004). Specker holds that § 726(b) mandates disgorgement in an administratively insolvent case to facilitate distribution on a pro rata basis among creditors in the same class. 393 F.3d at 662. In Specker, the court rejected the argument made by the debtor's chapter 11 counsel that the $10,000 retainer already paid to him was a final award not subject to mandatory pro rata distribution. Instead, the court held that the retainer was property of the estate paid as interim compensation, which is "subject to re-examination and adjustment." The court observed that "interim compensation is payment for professional services authorized by § 330(a), and § 330(a) fees are administrative claims." Thus, it concluded, the attorney's claim, "like other approved administrative

7

claims on the estate, at all times remained subject to the statutory *pro rata* distribution scheme in § 726(b)." Specker Motor, 393 F.3d at 663.

The Specker decision effectively overruled a Sixth Circuit Bankruptcy Appellate Panel decision, In re Unitcast, Inc., 219 B.R. 741 (B.A.P. 6th Cir. 1998), which stood for exactly the opposite view. The Unitcast court held that "[n]othing in 726(b) . . . compels trustees of administratively insolvent estates to reach back through the prior administrative period(s) to recover (only) payments to professionals, that disgorgement then transforms into (unpayable) 'administrative expenses.'" 219 B.R. at 753, overruled by Specker Motor, 393 F.3d 659.

The most persuasive opinion that has addressed this issue is the recent decision by Bankruptcy Judge Robert J. Kressel from District of Minnesota in In re Hyman Freightways, Inc., 342 B.R. 575 (Bankr. Minn. 2006). In Hyman, Judge Kressel slices cleanly through to the heart of the matter, which is simply this: § 726 dictates how a trustee is to distribute property, but does not provide a basis on which the trustee can recover it. Section 726 does not control or even directly pertain to the trustee's attempt to recover approved payments to administrative professionals, and it in no way requires a trustee to "unwind" the chapter 11 process by recovering paid chapter 11 administrative

8

expenses in order to redistribute them in different proportions. 342 B.R. at 579.

The court denied the trustee's motion for the return of fees, concluding that neither § 726(b) nor equitable principles require it. The court acknowledged a "fair amount" of contrary case law, but, without citing any cases, presented a straightforward and convincing interpretation of the statute.  This court agrees with Judge Kressel that the plain language of § 726(b) itself pertains only to distribution, and does not mandate disgorgement of fees from professionals.  See In re St. Joseph Cleaners, Inc., ___ B.R. ___, 2006 WL 2023553 at *6 (Bankr. W.D. Mich. 2006)(the "authority to 'reel back' such [professional] fees does not stem either directly from Section 726(b) or indirectly through the imposition of Section 105(a)"); see also 3 Collier on Bankruptcy ¶ 331.04[2][b] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2005)("[t]here is nothing in sections 331 or 726(b) that requires disgorgement due to administrative insolvency").

Although § 726(b) does not mandate disgorgement of fees, the court may nevertheless require disgorgement in an administratively insolvent case.  Whether disgorgement should be ordered will depend upon the circumstances of each case and the facts specific to each professional. The court must carefully review the orders that authorized compensation and the facts surrounding the payment of interim compensation.  In this

9

case the professionals, including Blank Rome, were required by court order to hold in trust 20% of their allowed interim compensation. As the court stated in its final fee order of March 15, 2004, the purpose of the 20% holdback was to ensure that funds would be available if the estate was determined to be administratively insolvent. Disgorgement, therefore, was contemplated, at least to the extent of 20% of the amount of allowed interim compensation. Another factor to be considered, a factor that favors Blank Rome, is that Blank Rome continued to perform services for the Committee even though its eighth and ninth interim fee applications were not approved and paid.

There are too many outstanding disputed factual issues to grant summary judgment to either the trustee or to Blank Rome on the issue of disgorgement.

The court, however, agrees with Blank Rome that based upon undisputed facts Blank Rome was given a secured retainer of $100,000 that would not be subject to disgorgement. The court's order of September 20, 2001, authorizing the employment of Blank Rome is quite clear that Blank Rome was to have a $100,000 retainer to protect the firm from the risk of nonpayment. See In re Carolina Premier Medical Group, 2001 WL 1699220 (Bankr. M.D.N.C. 2001)(unpublished opinion holding that under North Carolina law, a security retainer paid to a professional is not subject to disgorgement under § 726(b) in context of conversion of a case from chapter 11 to chapter 7); In re Dick

Cepek, Inc., 339 B.R. 730, 739 (B.A.P. 9th Cir. 2006) ("[A] professional holding a security interest in a prepetition retainer cannot be forced to share that retainer with other administrative claimants solely to achieve pro rata distribution under section 726(b).").

Ordinarily, Blank Rome would be authorized to apply its $100,000 retainer to its unpaid fees, however, it may not do so in this case. As the court stated in its order of March 15, 2004, the retainer was to be held in trust. Final Fee Order p. 4. Blank Rome failed to hold 20% of the interim fees awarded to it in trust as required by the court's Administrative Order of October 11, 2001, and the court, rather than requiring Blank Rome to deposit the 20% into its trust account, required Blank Rome to continue to hold the $100,000 in trust pending the court's receipt and consideration of the trustee's estimate of administrative fees and the funds available to pay them. Final Fee Order pp. 2-3. The $100,000 already in Blank Rome's trust account represents approximately 20% of the $512,371.55 paid to Blank Rome as interim compensation, and the original $100,000 retainer essentially takes the place of the approximately $100,000 Blank Rome should have held back, and separately held in trust.

The court previously mentioned that the trustee has brought adversary proceedings for disgorgement against most of the professionals in this case. Almost all of those adversary proceedings

have been settled, and, perhaps, given the court's ruling today, the trustee and Blank Rome may also come to an agreement with respect to disgorgement. If a settlement is not reached, a scheduling conference will be held and the adversary proceeding will continue.

Accordingly, the trustee's motion for Judgment on the Pleadings is **DENIED** as is Blank Rome's Cross-Motion for Summary Judgment. Blank Rome shall continue to hold $100,000 in trust.

**SO ORDERED.**

**END OF DOCUMENT**